IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

NANTONG YANGZI FURNITURE
COMPANY, LTD, and SHANGHAI
MAOJI IMP. & EXP. CORP. LTD.                                        PLAINTIFFS

V.                                                       CAUSE NO.: 1:11CV142-SA-DAS

INDON INTERNATIONAL, LLC                                              DEFENDANT

MEMORANDUM OPINION

Nantong Yangzi Furniture Company and Shanghai Maoji Imp. & Exp. Corp. Ltd. ("Nantong" or "Plaintiffs") filed this cause of action seeking to recover amounts allegedly owed by Indon pursuant to a series of Purchase Orders entered into between the parties. Indon counterclaimed asserting that Nantong breached the implied warranty of merchantability by providing damaged, defective, and inferior quality goods, and causing an increased anti-dumping duty to be imposed on Indon.

Nantong filed a Motion for Summary Judgment [55] on its claims and the counterclaims asserted against it. After reviewing the motion, responses, rules and authorities, the Court finds that Nantong's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

*Factual and Procedural Background*

Indon International is a domestic retailer of custom-designed furniture for the hospitality industry. Nantong, a corporate entity organized pursuant to the laws of the People's Republic of China, was Indon's primary furniture manufacturer during the relevant time period. Both parties agree that the Purchase Orders placed by Indon and sent to Nantong created valid, binding contracts between the parties. The parties additionally agree that the following terms, included on most of the Purchase Orders, apply to all of their transactions:

> **Terms**: 50% deposit with order; Balance 30 days following delivery to job site. INDON will charge back any extra costs caused by bad quality and delay when it is the factory's fault.

While Indon paid the fifty percent deposit on Purchase Orders placed between June 2009 and 2010, Nantong insists Indon thereafter breached the contract by failing to pay the remaining money as agreed. Moreover, Nantong alleges that Indon's failure to pay the remaining balance constitutes a breach of the duty of good faith and fair dealing as the reason for non-payment was unreasonable. Both parties acknowledge that Nantong manufactured the furniture requested (although questions remain concerning the quality of that furniture) and shipped the furniture to the end user. Indon's customers received the furniture from Nantong, and despite repairs or refurbishments, the customers kept the furniture sent by Nantong. Nantong further admits that there were some flaws in the furniture shipped to those end users; however, Nantong argues that the items were repaired, retained, and continue to be used by Indon's customers. In all, Nantong asserts that Indon owes it $415,573.46 on the outstanding Purchase Orders.

There is also no dispute that Indon failed to pay the balance on the following projects: 2175, 1535, 2044, 2370, and 1928. Indon confessed that it owes the balance on Purchase Orders 2085 A & B, 2085, 2533, 2151, and 1884, for a total of $29,797.71. However, Indon contends there are genuine disputes of material fact as to whether the goods tendered by Nantong under projects 2175, 1535, 2044, 2370, and 1928 were defective, and whether Nantong breached the implied warranty of merchantability as to those purchase orders. Indon contends it is entitled to a charge back for repairs it made on defective furniture sent to its customers. Indon counters that Nantong breached the contracts by providing non-conforming goods, which caused Indon to lose revenues and future profits.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*Discussion and Analysis*

Because the contracts at issue concern the sale of goods, the Uniform Commercial Code applies in addition to the contractual provisions in place. Uniform Commercial Code 2-601 establishes the "perfect tender" rule: goods must conform to the contract and unless they do, the buyer has the right to reject them. Miss. Code Ann. § 75-2-601. The Court notes here that there is a question of fact as to whether the goods supplied by Nantong were perfect tender under the contract. Indon has failed to present evidence that some furniture provided under certain purchase orders was defective or non-conforming. Conversely, Nantong has agreed that some of the furniture was non-conforming. The Uniform Commercial Code provides that upon tender of goods which fail to conform to the contract, the buyer may reject the goods, accept the goods, or accept some and reject the non-conforming portions. Miss. Code Ann. § 75-2-601.

Acceptance of goods occurs when the buyer ". . . signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity" or "fails to make an effective rejection . . . ." Miss. Code Ann. § 75-2-606. Indeed, Section 607 provides that

> Acceptance of goods by the buyer precludes rejection of the goods accepted and if made with knowledge of a nonconformity cannot be revoked because of it unless the acceptance was on the reasonable assumption that the nonconformity would be seasonably cured but acceptance does not of itself impair any other remedy provided by this chapter for nonconformity.

The question of whether the goods were accepted by Indon is more appropriately answered by a jury. See Micromedia v. Automated Broadcast Controls, 799 F.2d 230, 235 (5th Cir. 1986) (citing with approval interrogatories propounded to a jury to determine whether the buyer accepted the goods and exercised ownership over them).

Section 2-607(3) provides that a buyer who has accepted non-conforming goods must notify the seller of the breach within a reasonable time or "be barred from any remedy."

Therefore, pursuant to that Section, neither acceptance nor revocation of acceptance bars the buyer's right to damages for nonconformities in the accepted goods. The Section further places on the buyer the burden of proof that a breach has occurred. In its Rule 30(b)(6) deposition, the corporate representative for Indon asserted that Nantong was never notified of any amounts Indon intended to charge back pursuant to the purchase orders. However, Jon Nicholson, a former president of Indon, attached an affidavit to Indon's response indicating that Nantong was notified of the repair efforts as well as Indon's intent to seek to charge back the costs for such repairs. While the evidence is tenuous that Indon notified Nantong of the repair efforts, the Court finds this to be a jury decision. Thus, to the extent a jury determines Indon either rejected or revoked acceptance of the allegedly non-conforming goods, the determination of whether notice of the alleged breach was appropriately given within a reasonable time is also one for the jury. See Miss. Chem. Corp. v. Dresser-Rand Co., 287 F.3d 359, 368 (5th Cir. 2002) (noting that a reasonable jury could conclude that the notice provided by the buyer under the default notice provision provided for in 2-607(3) triggered liability); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 628 (5th Cir. 2001) ("[n]otice is ordinarily a question of fact and becomes a question of law 'only where there is no room for ordinary minds to differ about what the proper conclusion to be drawn from the evidence.") (citations omitted). Accordingly, the Court finds that a question of fact exists as to whether Indon provided sufficient notice pursuant to 2-607(3).

Further, the Court finds a question of fact as to whether Nantong breached the implied warranty of merchantability and/or the extent of damages attributable to the alleged breach. If the jury were to determine certain goods to be non-conforming, the buyer's damages on a breach of warranty claim are generally the difference between the value of the goods as accepted and the

value of the goods as warranted, unless special circumstances show proximate damages of a different amount. See Miss. Code Ann. § 75-2-714(b).

Accordingly, Nantong seeks summary judgment that Indon breached the contracts recognized on Purchase Orders for projects 2044 R1; 1535 R2-A; 2370 R3-A; 2370 R3-B; 2175 A-A; 2175 B-A; 2175 A-B; 2175 B-B; 2175; 2085 A; 2085 B; 2085; 2533; 2151; and 1884. As Indon has conceded that it did breach the contracts in Purchase Orders 2085 A & B; 2085; 2533; 2151; and 1884, summary judgment on those contracts are GRANTED. As to the remaining claims, there exist genuine disputes of material fact as to the extent of damages available pursuant to the Uniform Commercial Code.

Nantong also seeks summary judgment on Indon's counterclaim alleging Nantong's liability for an anti-dumping tariff imposed on certain furniture during the relevant time frame. Indeed, Indon was fined $11,781.52 by the United States Customs and Border Protection. Indon asserts this duty was levied as a result of the Plaintiffs' failure to respond to a governmental inquiry as to the imported furniture.

The Code of Federal Regulations provides that liability attaching on importation is a "personal debt due from the importer to the United States which can be discharged only by payment in full of all duties legally accruing, unless relieved by law or regulation." 19 C.F.R. § 141(b)(1). Indon has failed to identify any offset provision in the Regulations to establish any exporting entity liability for the anti-dumping duty. Because the anti-dumping duty is a personal liability, and Indon has failed to show why Plaintiffs should be held liable for an importation tax imposed on Indon, the Court grants Plaintiffs' request for summary judgment as to Indon's anti-dumping duty liability claim.

*Conclusion*

Nantong's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Genuine disputes of material fact exist regarding the alleged non-conformity of the furniture, Indon's acceptance of that furniture, and the notice given to Nantong of the alleged problems.

SO ORDERED, this the 18th day of January, 2013.

                                               **/s/ Sharion Aycock**
                                               **U.S. DISTRICT JUDGE**